COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Felton and Senior Judge Hodges
Argued at Chesapeake, Virginia


HELEN M. BROCCUTO

                                      MEMORANDUM OPINION[*] BY
v.    Record No. 0661-02-1         JUDGE WALTER S. FELTON, JR.
                                          OCTOBER 29, 2002
JAMES C. BROCCUTO


          FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                      Randolph T. West, Judge

            Frederic L. Moschel (Lisa A. Mallory;
            Moschel, Gallo & Clancy, L.L.C., on brief),
            for appellant.

            W. Dean Short, II (Short, Short, Telstad &
            Kerr, P.C., on brief), for appellee.


     Helen Broccuto contends on appeal that the trial court erred

(1) in considering the home studies of each party, which were not

introduced into evidence; (2) in ruling that James Broccuto was

the natural father of Caitlin Broccuto; and (3) in awarding

custody of Caitlin to Mr. Broccuto.  In consideration of the

paternity issue, Vincent Barnett requests that the Court dismiss

him as a party to this appeal for improper notice and Ms.

Broccuto's untimely filing of the amended notice of appeal.  Prior

to oral argument, counsel for the parties requested the Court to

affirm the trial court's ruling regarding the paternity issue,

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

rendering the motion to dismiss filed by Vincent Barnett moot, and no longer before the Court for consideration.  For the following reasons we affirm the judgment of the trial court.

## I.   BACKGROUND

### A.   DIVORCE, CUSTODY, PATERNITY

On April 8, 1993, James and Helen Broccuto were married. The following year they separated.  During that separation, Ms. Broccuto discovered she was pregnant.  In February 1995, the Broccutos reconciled and on July 25, 1995, Caitlin Victoria Broccuto was born.  A birth certificate was issued naming Mr. Broccuto as the natural father.

Subsequent to Caitlin's birth, the Broccutos separated several times.  Upon each separation, they executed a property settlement agreement that, among other things, acknowledged Caitlin was a child of the marriage and recognized Mr. Broccuto as her natural father.  On May 16, 2000, the Broccutos separated for the final time.  Mr. Broccuto filed a bill of complaint on June 7, 2000, requesting a divorce and custody of the child.

In her answer to the bill of complaint, Ms. Broccuto acknowledged that Caitlin was born of the marriage, but alleged that Mr. Broccuto was not her biological father.  A pendente lite hearing was held in the Newport News Circuit Court.  Among other things, it ordered that Mr. and Ms. Broccuto have joint custody of Caitlin, with Mr. Broccuto having physical custody. Additionally, Ms. Broccuto was directed to pay child support in

-

the amount of $160 per month, paid in two equal installments. Lastly, a home study was ordered for both Mr. and Ms. Broccuto.

On June 12, 2000, five days after Mr. Broccuto filed his bill of complaint, Ms. Broccuto filed a petition in the Newport News Juvenile and Domestic Relations District Court seeking to have Caitlin's paternity determined. Ms. Broccuto alleged that Vincent Barnett was Caitlin's biological father. The juvenile and domestic relations district court denied the petition, and Ms. Broccuto appealed to the circuit court. The circuit court ordered the paternity test to be performed. On January 5, 2001, the paternity test results showed, with a 99.97% probability, that Mr. Barnett was Caitlin's biological father.

On July 3, 2001, a hearing was held in the circuit court regarding both the paternity appeal from the juvenile and domestic relations district court and the custody aspect of the divorce action. The court awarded Mr. Broccuto a divorce a vinculo matrimonii, custody of Caitlin, and held that he was Caitlin's natural father.

B.   PROCEDURAL HISTORY

On February 12, 2002, the circuit court's ruling was reduced to writing. Three orders were prepared for endorsement, an order for the paternity appeal from the juvenile and domestic relations district court, a final divorce decree a vinculo matrimonii for the divorce and custody matter, and a final order incorporating the paternity determination, custody, and child

-

support.  At the hearing, Ms. Broccuto's attorney objected to the orders.

> MR. HOLLAND [Ms. Broccuto's attorney]:  The paternity test was done.  Mr. Barnett was found to be the father by the evidence in the paternity test and, accordingly, I object to the orders providing that Mr. Broccuto is the natural father of the infant child.  I object to the Court's naming Mr. Broccuto – ordering that Mr. Broccuto be named on the birth certificate, and I object to the Court's relieving Mr. Barnett of his obligation to support his child.
>
> THE COURT:  All right, sir.  I'm going to leave it as I ruled back on July the 3rd.  If you will endorse the order seen and objected to.

Ms. Broccuto's attorney noted his objection in writing as part of his endorsement of the court orders.

On March 14, 2002, Ms. Broccuto timely noticed an appeal to the order granting the final decree of divorce a vinculo matrimonii.  Mr. Broccuto was the only other party named.  On April 9, 2002, more than thirty days after entry of the final order, Ms. Broccuto filed an amended notice of appeal.

The amended notice of appeal seeks review, not only of the final decree of divorce a vinculo matrimonii, but also the final order of the trial court entered on February 12, 2002, determining, among other things, that Mr. Broccuto is the natural father of Caitlin.  The amended notice of appeal also seeks to join Mr. Barnett as a party.

-

II.  HOME STUDY REPORTS AND CHILD CUSTODY

Ms. Broccuto argues that the trial court erred in considering the home studies of each party, which were not entered into evidence, and erred in awarding custody of Caitlin to Mr. Broccuto.  Ms. Broccuto did not preserve the home study reports or child custody issues at trial.  However, she relies on the ends of justice exception found in Rule 5A:18 to proceed on the merits.  That reliance is misplaced.

Rule 5A:18 provides in pertinent part that:

> [n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling except for good cause shown or to enable the Court of Appeals to attain the ends of justice.

"[T]he ends of justice exception is narrow and is to be used sparingly . . . . "  Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989).  "Whether we apply the bar of Rule 5A:18 or invoke the ends of justice exception, we must evaluate the nature and effect of the error to determine whether a miscarriage of justice occurred.  We must determine whether the error clearly had an effect upon the outcome of the case."  Id. at 131, 380 S.E.2d at 10.

A.  HOME STUDIES

The trial court's consideration of the home study reports did not have an effect upon the outcome of the case.  In reviewing the home studies reports, the trial court indicated

-

that they had not altered its thinking.  In prior hearings, the court heard much of the same information as found in the respective reports of the home studies.  In rendering its decision, the court stated:

> In this case, I've heard a lot of this evidence previously.  I have studied the home studies.  I have the testimony from previous hearings.  Nothing much is new. And the Court had pretty much made its mind up before it came in here this morning. That's not to say I didn't listen to you.  I understood every word you said.  But nothing that has been said this morning changed my mind about what I have seen previously and what has been in the studies that the Court has received from the home studies.

Since the home studies did not have an effect on the outcome of the case, the ends of justice exception does not apply.

### B.  <u>CHILD CUSTODY DETERMINATION</u>

The trial court's determination of custody did not amount to a miscarriage of justice.  Thus, the ends of justice exception does not apply.  During the course of the divorce proceedings, the court was presented with considerable evidence relating to the factors enumerated in Code § 20-124.3.[1]  For example, it heard evidence of abuse of Ms. Broccuto at the hands of her boyfriend, which required a restraining order.  It heard of the relationship between Mr. and Ms. Broccuto and Caitlin,

---

[1] Code § 20-124.3 enumerates several factors the court must consider when deciding the best interests of the child for the purposes of determining custody.

-

the relationship between Caitlin and her grandparents, the involvement of both parties in Caitlin's development, and the propensity of each party to actively support Caitlin's contact and relationship with the other.  Taking these and other factors into consideration, the court did not abuse its discretion in determining that it was in Caitlin's best interest to be in Mr. Broccuto's custody.  For those reasons, we affirm the trial court's determination of custody.

## III.  Paternity Issue

Prior to oral argument, counsel for Ms. Broccuto, Mr. Broccuto and Vincent Barnett requested that the Court affirm the trial court's ruling that James C. Broccuto is the natural father of Caitlin Broccuto.  We grant the parties' request and affirm the trial court's ruling on the paternity issue.

Because we affirm the trial court's ruling on the paternity issue, the motion filed by Vincent Barnett to dismiss him from the proceedings is moot and no longer before the Court for consideration.

Affirmed.

-